WELDEN NAT. BANK OF ST. ALBANS v. SMITH et al. FARMERS' NAT. BANK OF MALONE v. SAME. OGDENS- BURG BANK v. SAME.

(Circuit Court of Appeals, Second Circuit. March 2, 1898.)

Nos. 59, 60, and 61.

1. RAILROAD LEASES—ASSUMPTION OF DEBTS.

A lessee under a railroad lease covenanted to pay all obligations of the lessor incurred "as common carriers, warehousemen, or otherwise," and thereafter to pay the interest on certain mortgage bonds of the lessor. *Held*, that "or otherwise" referred only to obligations of the same class as those enumerated, and that earnings accruing in the hands of receivers of the lessee were applicable to interest on the bonds, rather than to judgments on claims not falling within the class.

2. SAME—ASSUMPTION OF INTEREST PAYMENTS—LIABILITY TO BONDHOLDERS.

A lessee railroad company, which covenants to pay to the trustees of the lessor's mortgage bonds interest thereon as it accrues, is directly liable to the mortgagees therefor, though they are not parties to the lease, since such an agreement shows that the contracting parties intended this stipulation for the benefit of the mortgagees.

3. SAME—LIABILITIES OF LESSOR.

A railroad company which has leased its road, rolling stock, and franchises to another company remains responsible to the public for the acts and defaults of the lessee in operating its road.

Appeal from the Circuit Court of the United States for the District of Vermont.

Chas. M. Wilds, for receivers.

Wager Swayne and Wm. B. Hornblower, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. These are appeals from final orders in a suit brought in the United States circuit court for the district of Vermont by the Grand Trunk Railway Company of Canada against the Central Vermont Railroad Company, and they present the question of the proper distribution to be made of the earnings from a leased railroad in the hands of the receivers of the Central Vermont Railroad Company. The receivers were appointed March 20, 1896, in the suit mentioned, and in an ancillary suit in the United States circuit court for the Northern district of New York. The receivership extends over all property of the Central Vermont Railroad Company and its leased lines, including the Ogdensburg & Lake Champlain Railroad. The fund in controversy consists of net earnings of the latter railroad to the amount of $105,000, of which $11,132.36 accrued prior to the receivership, and the balance while the receivers were operating the road.

Since June, 1886, until the receivers were appointed, the Central Vermont Railroad Company operated the railroad of the Ogdensburg & Lake Champlain Railroad Company under an agreement which was

practically, although not technically, a lease. The agreement was executed June 1, 1886, between the Ogdensburg & Lake Champlain Railroad Company, as party of the first part, and the Consolidated Railroad Company of Vermont, as party of the second part, and immediately thereafter was assigned to the Central Vermont Railroad Company; and that company, by the articles of transfer, assumed all the obligations of the Consolidated Railroad Company of Vermont. For convenience it will be termed a "lease," and the parties to it termed "lessee" and "lessor." By the terms of the lease the lessee was to have immediate possession of and operate the franchise and all the property of the lessor for and during the term of the corporate existence of the lessor, and was authorized to collect and receive all the income, rents, and profits of the railroad and property of the lessor. It contained a covenant upon the part of the lessee as follows:

"That all the gross earnings, income, and receipts of and from the business traffic and rentals of said railroad and other property, and referred to in article second of this agreement, shall in each year and annually during the continuance of this agreement be applied and disposed of by the party of the second part as follows."

So far as is material for present purposes, the agreement provided that the gross earnings should be appropriated first to the expenses of operation and maintenance of the railroad, including taxes and repairs, to the payment of certain specified outstanding obligations of the Ogdensburg & Lake Champlain Railroad Company, and to satisfy the covenants of article 3 of the agreement; thereafter to the payment of the interest upon the first consolidated mortgage bonds of the Ogdensburg & Lake Champlain Railroad Company, a lien upon the railroad prior to the lease; thereafter to the payment or adjustment of the liabilities of the Ogdensburg & Lake Champlain Railroad Company upon bonds of the Lamoille Valley Extension Railroad Company; and finally that the residue should be divided between the lessor and lessee in specified proportions.

The appellants are judgment creditors of the Ogdensburg & Lake Champlain Railroad Company, and they assign error of the decision of the court below in adjudging that their demands were not entitled to priority of payment out of the earnings of the leased railroad before the payment of the semiannual installment of interest upon the first consolidated mortgage bonds, which accrued April 1, 1896.

It is conceded by all parties that the fund should be distributed according to the terms of the lease. The lease is the origin of the fund in the hands of the receivers, and they acquire the fund cum onere.

It is insisted by the appellants that their several debts are obligations assumed by the terms of article 3 of the lease, and consequently are payable before the interest upon the mortgage bonds. The covenants of that article, so far as they are material to the present controversy, are as follows:

"The party of the second part covenants and agrees * * * to assume, conduct, and pay the expenses of any and all litigations now pending wherein the said party of the first part is a party or interested, and to pay any and all judgments that may have been or may ultimately be recovered against the said party of the first part herein, except the judgment or judgments that may be recovered in the suit now pending in the supreme court of the state of New York, wherein

Robert L. Day and another are plaintiffs and party of the first part, and the Lamoille Valley Extension Railroad Company and others are defendants, as to which provision is hereafter made, if the highest court to which said litigation may be appealed shall determine against the party of the first part, or said party of the second part shall be advised by competent counsel that appeal therein will be useless." "To fulfill all outstanding contracts or obligations of said party of the first part which are enumerated and mentioned in the schedule hereto annexed, marked 'Schedule. A,' as fully, to all intents and purposes, as they ought to be fulfilled by the party of the first part, and all obligations that it has incurred, either by statute or common law, as common carriers, warehousemen, or otherwise, in the operation and maintenance of its railroad property." "To assume all obligations of the party of the first part that may hereafter be incurred, either by statute or at common law, as common carriers, warehousemen, or otherwise, and indemnify and save harmless the party of the first part from all costs, damages, or loss by reason of any failure to fulfill said obligations, and by reason of any claim that may be made for neglect, accident, or default happening upon or in connection with said road or the property of the party of the first part, and from any claims, damages, actions, or judgments arising from the maintenance and operation of said railroad and other property during the continuance of this agreement." "To keep, comply with, and obey the laws of the state of New York in maintaining and operating the said railroad and other property."

The covenant upon the part of the lessee for the payment of the interest upon the mortgage bonds provided that the gross earnings, income, receipts, etc., should be applied—

"To the payment punctually when due, and in full, of the interest on the bonds * * * known and described in the mortgage executed by said party of the first part to William J. Averell and Stuyvesant Fish, as trustees, as the 'First Consolidated Mortgage Bonds' of said party of the first part, dated April 1, 1880, and the total issue wherefor is limited to $3,500,000, and which interest is at the rate of six per centum. per annum, and payable semiannually on the first days of April and October in each year."

The judgment of the appellant the Welden Bank is founded upon a promissory note for $10,000 made by the Ogdensburg & Lake Champlain Railroad Company December 2, 1895. The note was a renewal of a series of notes, the first of which was made March 13, 1886, and the consideration of which was money lent to the Ogdensburg & Lake Champlain Railroad Company, and used by it in payment of "sundry bills and pay-roll vouchers." The judgment of the appellant the Ogdensburg Bank is founded upon a promissory note for $15,000 made by the Ogdensburg & Lake Champlain Railroad Company November 26, 1895. The note was a renewal of a series of notes, the first of which was made in 1888, and the consideration of which was money lent to the Ogdensburg & Lake Champlain Railroad Company, and used by it "in the settlement or compromise of a certain claim for $350,000 made by the holders of the bonds of the Lamoille Valley Extension Railroad Company." The judgment of the Farmers' National Bank of Malone is founded upon a note made December 2, 1895, by the Ogdensburg & Lake Champlain Railroad Company for $10,000. This note was a renewal of a series of notes, the first of which was made in 1888, the consideration of which was money loaned to the Ogdensburg & Lake Champlain Railroad Company, and used for the same purpose as the loan from the Ogdensburg Bank. It will be observed that the original note to the Welden Bank was outstanding prior to the execution of the lease, and was not one of the obligations

enumerated in Schedule A, and that the moneys loaned by the other appellants were used to discharge demands which by the express terms of the lease were not to be satisfied from the earnings until the interest on the mortgage bonds had first been paid.

The argument for the appellants is that the words "or otherwise," following the words "common carriers, warehousemen," include claims of the description of theirs. If these words have that scope and meaning, they would bind the lessee to pay, not only the outstanding obligations of every kind which had already been incurred by the lessor in operating or maintaining the railroad, but all and every kind which the lessor might thereafter see fit to assume. If that were a correct construction, the elaborate detailed enumeration of the obligations, outstanding and future, which were to be assumed by the lessee, was unnecessary and meaningless. The parties could not have contemplated giving unlimited power to the lessor to create obligations which would absorb the earnings of the railroad, and thus prevent their application to the other purposes provided for in the lease. The covenants were intended, we think, to protect the lessor against all claims or liabilities which had been incurred or might thereafter arise by operation of law from its acts or defaults in exercising its capacity of common carrier, warehouseman, or other similar duties as a public agent. The Ogdensburg & Lake Champlain Railroad Company had no power by its organic law to lease its railroad and franchise (Laws N. Y. 1839, c. 218), and, notwithstanding the agreement, remained responsible to the public for the acts and defaults of the lessee in operating its railroad. Abbott v. Railroad Co., 80 N. Y. 27; Troy & B. R. Co. v. Boston, H. T. & W. Ry. Co., 86 N. Y. 107. It remained liable, not only as carrier and warehouseman, but otherwise, for injuries caused by the negligence of those operating its road. The words "or otherwise" should be read ejusdem generis. Lewis v. Smith, 9 N. Y. 502–520; Monck v. Hilton, 46 Law J. M. Cas. 167; Haren v. Archdale, 12 L. R. Ir. 318; Corporation of Portsmouth v. Smith, 13 Q. B. Div. 184; Morgan v. Omnibus Co., 53 Law J. Q. B. 352.

The court below would not have been justified in finding that the moneys loaned by the Ogdensburg Bank and the Farmers' National Bank of Malone were used for the purposes stated in the affidavit of Louis Hasbrook. The statement of that affidavit is founded upon hearsay, and contradicts the explicit statements in the petitions of the two banks. It is not admitted by the answer to the petition. If, however, it should be assumed, as stated in the affidavit, that the moneys borrowed of the Ogdensburg Bank and the Farmers' National Bank of Malone were used by the Ogdensburg & Lake Champlain Railroad Company in paying expenses of litigation which by article 3 the lessee covenanted to pay, we think the demands of the appellant are not entitled to priority over those of the bondholders. The covenant to pay interest upon the bonds was one which could have been enforced by the trustees of the bondholders in an action against the lessee. The covenants of article 3 were solely for the benefit of the lessor. The former gave to the bondholders an equitable lien upon the earnings, because the trustee could have compelled the lessee to apply the earn-

ings to the payment of the interest. The latter gave simply a remedy to the lessor, which it might or might not assert, at its own option.

There are many cases in which a promise made upon a valid consideration by one person to another, for the benefit of a third, can be enforced by the third person in his own name, although he was not privy to the consideration. As was said in Austin v. Seligman, 18 Fed. 522, where the general question was discussed:

"The result of the better-considered decisions is that a third person may enforce a contract made by another for his benefit whenever it is manifest from the language or terms of the agreement that the parties intended to treat him as the party primarily interested."

In the language of Folger, J., in Simson v. Brown, 68 N. Y. 355:

"The contract must be made for his benefit as its object, and he must be the party intended to be benefited."

The authorities cited in Austin v. Seligman and in the note to that case by Mr. Wharton are sufficient references in support of the proposition, and we shall not attempt to collate or review them.

It was as much for the benefit of the lessee as the lessor that the interest upon the bonds, which were a lien upon the property coming into the possession of the lessee, should be paid at maturity; and the terms of the covenant indicate that it was to be paid by the lessee as it matured, and directly to the trustees named in the mortgage. On the other hand, it is obvious that the covenant of article 3 to pay the expenses of pending litigation was intended to be satisfied by making the payment directly to the lessor. No other person was named, or apparently known, as the one to whom payment should or could be made.

In any view of the case, therefore, the decision of the court below was correct.

The orders are affirmed, with costs.