### MERCANTILE TRUST CO. v. BALTIMORE & O. R. CO. et al.

(Circuit Court, S. D. Ohio, E. D. April 17, 1899.)

#### No. 889.

CONTRACT BY DEBTOR FOR BENEFIT OF CREDITOR—RIGHT OF CREDITOR TO ENFORCE.

Where a railroad company leased the road of another company, contracting to pay as a part of the rental the interest on the bonds of the lessor, the holders of such bonds, who, in reliance on such contract, accepted bonds of a new issue, are entitled to the benefit of the contract, and on the insolvency of the lessee, and the appointment of receivers by a federal court, who operated its road, including the leased line, thus becoming liable for subsequent rentals, such bondholders may be permitted to come in and directly assert their claims to interest against the fund in the hands of the court for the payment of rentals, notwithstanding the previous appointment of a receiver for the lessor by a state court, with power to collect the rentals due the company; nor is it necessary that the bondholders should be represented in such matter by the trustee in the mortgage securing the bonds, where no action has been taken by him to foreclose the mortgage, as no question relating to the mortgaged property is involved, and the trustee has no concern with the rentals until he has asserted his right to take possession of the road.

In the matter of the intervening petition of Mark T. Cox, Arthur P. Sturges, and William Church Osborn.

Cox, Sturges, and Osborn, on behalf of themselves and all other bondholders of the Sandusky, Mansfield & Newark Railroad Company, as reorganized, who should come in and contribute their share of the expenses of this proceeding, have filed a petition in this case, by leave of court, against the Baltimore & Ohio Railroad Company, John K. Cowen and Oscar G. Murray, the receivers of the Baltimore & Ohio Railroad Company, the Central Ohio Railroad Company, intervener, and the Mercantile Trust Company. The Baltimore & Ohio Railroad Company is a corporation of Maryland and West Virginia, and owns and operates a railroad running from Baltimore west to the Ohio river, at Wheeling and Parkersburg. It has operated for many years under lease the railroad of the Central Ohio Railroad Company from Bellaire, opposite Wheeling, to Newark. The Central Ohio Company has leased from the Sandusky, Mansfield & Newark Railroad Company a railroad 116 miles in length from Newark to Sandusky. The Central Ohio Company, in turn, has leased this line of road, with the line of road which itself owns under its lease, to the Baltimore & Ohio Company. The Baltimore & Ohio Railroad Company got into financial difficulties, and a creditors' bill was filed in the circuit court of the United States for the district of Maryland against the company, under which receivers were appointed to operate the property of that company, together with its leased lines west of the Ohio river. Upon an ancillary bill in this court, the same receivers were appointed, and entered into occupation of the leased lines, and have operated them since their appointment. The Central Ohio Rail-

road Company has filed an intervening petition in this cause to compel the receivers either to pay the rentals under the lease, on the ground that they have assumed the obligation of the lease, or, if that prayer be not granted, to compel an accounting for the net earnings of the leased property while operated by the receivers. The present intervening petitioners are the holders of mortgage bonds issued by the Sandusky, Mansfield & Newark Railroad Company, secured by a mortgage issued by that company to the Union Trust Company of New York. The intervening petitioners hold 463 $1,000 bonds of that issue, which is not a majority of the entire issue. In their petition they claim that by virtue of the terms of the lease, to which the Baltimore & Ohio Railroad Company, the Central Ohio Railroad Company, and the Sandusky, Mansfield & Newark Railroad Company were all parties, it was stipulated by the Central Ohio Company as principal, and by the Baltimore & Ohio Railroad Company as guarantor, that a part of the rent under the lease should be paid to the bondholders of the Mansfield Company in full payment of the interest as it should fall due semiannually; that this payment should be made out of, and credited as part payment of, the rent provided for under the lease of the Mansfield Company. The contention is that the bondholders are now entitled, under that provision, to apply to this court—which, it is claimed, has a fund applicable to the payment of rent under the lease, or, at least, of compensation for use and occupation of the Mansfield road—to distribute from that fund a sufficient amount to pay the interest due on the bonds of petitioners. To this intervening petition the Central Ohio Railroad Company has filed a plea setting forth the fact that, upon the petition of certain of the stockholders of the Sandusky Railroad Company, the common pleas court of Huron county, Ohio, in a suit against the Mansfield Company setting up its insolvency, appointed receivers. Neither the trustee of the bondholders nor the bondholders themselves were made parties. The prayer of the petition was that all the property of the railroad company might be sold, and the proceeds thereof applied to its indebtedness, according to the priority of the liens thereon, and the surplus, if any, to be applied to the payment of the debts of the unsecured creditors pro rata. The receivers were appointed by consent of the Sandusky Company, were directed to collect all the rents especially from the Baltimore & Ohio Railroad Company and its receivers, and were authorized to seek an accounting with the receivers of the company as to the earnings of the same since it went into their possession. The plea sets forth that from the facts thus stated the rights of the petitioners can only be worked out in the receivership cause pending in the common pleas court of Huron county, and to that court, and that alone, the petitioners must apply. The Baltimore & Ohio Railroad Company answers the intervening petition, setting up as one of its chief defenses the same facts which are set forth in the plea of the Central Ohio Railroad Company.

The following facts appear from the stipulation of counsel and the admitted averments of the plea: In 1869 the Baltimore & Ohio Railroad Company, in possession of the Central Ohio Railroad Company under a lease previously made and entered into, made a tripartite agreement with the Sandusky, Mansfield & Newark Railroad Company and the Central Ohio Railroad Company, whereby the Sandusky Company leased its road to the Central Ohio Company for a term of years, at an annual rental of $174,350 yearly, which sum "the said second party agrees to pay in two equal installments, half yearly, on the 30th day of June and the 31st day of December, or in such sums as may be required at that date, and thereafter to meet the interest or coupons of said party of the first part, and the balance of said installment required to pay said coupons that shall not be called for at the expiration of each six months shall be paid to the party of the first part." "And it is further agreed that the said second party will pay over, out of said moneys so due on said rent, to some bank or depository, as may be directed by the first party from time to time, an amount of money sufficient to pay the interest that may accrue on the mortgage debt then outstanding, evidenced by the bonds and coupons aforesaid, on said 30th day of June and 31st of December, annually, which sum includes the government tax thereon; and the balance of said rent shall be paid semiannually on said days to such officer of the party of the first part as may be authorized to receive the same." By the sixteenth article of the agreement, the Baltimore & Ohio Railroad Company guarantied that the Central Ohio Company should "in good faith do, keep, and perform all and singular, the matters and things and the cove-

nants and agreements which the said second party has hereinbefore covenanted and agreed to do; and more especially that said second party will pay, in the manner above specified, all the rents it has agreed to pay during the continuance of this lease, or any extension or continuance of the same, as above provided." Thereupon the Baltimore & Ohio Railroad Company took possession of the Sandusky Company's property under the lease. The lease provided that the outstanding mortgage debt of the Sandusky road should be funded into a new issue of mortgage bonds, amounting to $2,300,000, and after the execution of the lease a mortgage was executed to the Union Trust Company of New York to secure these bonds, and upon the inducement furnished by the execution of the lease and the guaranty of the Baltimore & Ohio Railroad Company the holders of the outstanding bonds of the Sandusky road surrendered the same, and received in exchange therefor bonds of the new issue. At the first meeting of the board of directors of the Sandusky Company after this lease was executed, resolutions were passed authorizing the treasurer of the company to receive the rent payable under the lease in excess of the amount of the interest due semiannually upon the new mortgage bonds, and designating the Union Trust Company of New York as the trustee to whom the lessees of the lease were to pay the amount due semiannually on the coupons of the bonds. Thereafter, and until the appointment of the receivers, the Baltimore & Ohio Company paid out of the rental due from the Central Ohio, and guarantied by the Baltimore & Ohio, to the Sandusky Company, a sum sufficient to pay the accruing semiannual interest on the bonds of the Sandusky Company. After their appointment, the receivers paid the amount necessary to meet two coupons accruing next thereafter to the same trustee. Default was made on the payment of the coupons on July 31, 1897, and no further sums have been paid to the bondholders since that time, or to any one else, on account of rental or compensation for use and occupation of the Sandusky road. In a supplemental agreement made between the three railroad companies in February, 1880, it was agreed that the lease of 1869 should be extended from the expiration of the original term for an additional 20 years, and a further term of 20 years thereafter, and that, at or before the maturity of the $2,300,000 bonded debt of the Sandusky Company, the Baltimore & Ohio Railroad Company should "have the privilege and option, if it so desires, to renew the same by a new issue of first mortgage bonds of the party of the first part at a lower rate of interest, or by extension of the old bonds at the low rate of interest, if the same shall be deemed expedient by the party of the first part, * * * and the difference of annual interest saved shall, to the extent of such difference, lessen the annual rental stipulated to be paid under article 5 of the lease aforesaid."

Geo. W. Wickersham and William Church Osborn, for Mark T. Cox and others.

George K. Nash and Louis G. Addison, for Central Ohio R. Co.

Edward Colston, for receivers of Baltimore & O. R. Co.

TAFT, Circuit Judge (after stating the facts). The intervening bondholders here are the creditors of the Sandusky Company. As part of the rental for its property, the Sandusky Company has secured from the Central Ohio and the Baltimore & Ohio Companies an agreement to pay the interest due upon the bonds of the intervening petitioners. As between the three railroad companies, with reference to the obligation to pay the interest on petitioners' bonds, the Sandusky Company is only a surety. The Central Ohio Company and the Baltimore & Ohio Company are principals. The Sandusky Company, which is the debtor of the intervening petitioners, has therefore the security of the obligations under a lease made by the Baltimore & Ohio Company and the Central Ohio Company to pay the interest due to the intervening petitioners. In equity, a creditor may have the benefit of any obligation or se-

curity given by the principal to the surety for the payment of the debt; and it is held by the supreme court of the United States in the case of Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, that this principle applies in favor of the creditors, even where there is no privity of contract between the creditor and the principal, and where the surety is the sole debtor of the creditor. Mr. Justice Gray, who delivered the opinion of the court in that case, said:

"In short, if one person agrees with another to be primarily liable for a debt due from that other to a third person, so that, as between the parties to the agreement, the first is the principal and the second the surety, the creditor of such surety is entitled, in equity, to be substituted in his place, for the purpose of compelling such principal to pay the debt."

In the case cited, which was in equity, the complainant, the holder of a note secured by a mortgage upon land in Washington, had filed a bill against a grantee of the mortgagor to compel that grantee to pay the amount due on the note. The bill was based on a clause in the deed to such grantee by which, as between him and the mortgagor, he assumed payment of the mortgage. The land had been sold under a prior mortgage, and no surplus remained with which to pay the mortgage of the complainant. It was held that in equity the complainant was entitled to subject to the payment of her claim against the mortgagor the obligation of the grantee of the mortgagor to him to pay her debt, treating it as a security held by the surety, who was the debtor of the complainant, for the payment by his principal of the debt. It seems to me that the present case comes clearly within the principle of Keller v. Ashford, and that the bondholders to whom it was provided, between the Sandusky Company and the Baltimore & Ohio Company, that the latter should pay their interest on the bonds of the Sandusky Company, may, in equity, compel the Baltimore & Ohio Company to pay that interest.

The first objection to the sufficiency of this petition is that "the individual bondholders, as such, have no right to interfere, in any litigation concerning the property covered by the mortgage securing their bonds, until the trustee either incapacitates himself from acting or refuses to act in their behalf." To this objection it is sufficient to answer that the petitioners here are not seeking to foreclose the mortgage given to their trustee to secure the payment of the principal and interest of their bonds. They are only seeking to subject a security held by their debtor for the payment of the interest on the bonds which is not included in the mortgage. The Central Ohio Company and the Baltimore & Ohio Company did not agree to pay the rent to the trustee under the mortgage for the benefit of the bondholders, but only to pay it to the bondholders themselves. The rule of practice, therefore, which requires that, in a foreclosure of the mortgage, the trustee in whom is the legal title shall represent the creditors secured by the mortgage, has no application whatever to the present litigation.

The next objection is "that neither the United States court for the district of Maryland, nor the courts acquiring ancillary juris-

diction over the Baltimore & Ohio Railroad Company, in connection with said suit, had any power or authority to assume control over the Sandusky, Mansfield & Newark Railroad Company as against the mortgage of that railroad company." To this objection the clear answer is that the petitioners do not seek to have the court exercise any power over the railroad covered by the mortgage given by the Sandusky Company. The petition shows that there is a fund in this court either of rental under the lease, or of compensation, accruing for the use and occupation of the railroad of the Sandusky Company, due from the receivers to some party in interest. The petitioners claim that they are that party in interest, and that they have the right to the fund, and ask that it be distributed to them. This court must make some order with respect to the distribution of the fund, and every claimant to that fund has a right to be heard in this court, upon due petition filed. The officers of this court are alleged to owe some one money on a certain account, and the petitioners claim that the money on that account is due to them. The decision by this court of the validity of the petitioners' claim is certainly not an assertion of any jurisdiction over the fee of the Sandusky Company upon which it executed its mortgage. It is true that that mortgage covers rents and profits, but it is well settled, and, indeed, is urged upon the court by the counsel upholding the plea, that, until the mortgagee asserts its rights under the mortgage to the possession of the road by filing a bill of foreclosure, and by taking possession, either through its trustee or by receiver of the court, it has no right to the earnings and profits. It follows, of course, therefore, that the mortgagee's rights under the mortgage are not in the slightest degree affected by the present proceeding. The trustee under the mortgage has not, as yet, taken possession of the road or asserted its right to the possession of the rents and profits. The proceeding in the Huron common pleas court is a proceeding by a stockholder, to which the mortgagee and the bondholders are not parties, and it is doubtful whether, under such a petition, the receivers appointed can be said to take possession of the property and the profits for the benefit of the mortgagee. But, even if it be conceded that the receivers are in possession for the benefit of the mortgagee and all others as their interest may appear, this would still not prevent the petitioners from asserting the right which they do assert here. Their claim is that, as bondholders, they have an equitable right to subject the obligation which the Baltimore & Ohio Company and its receivers are under to pay rent to the satisfaction of their claims for interest, and that this lien does not grow out of the mortgage, but is acquired by virtue of the lease, and the terms thereof, against the Baltimore & Ohio Railroad Company. They are not claiming the rent as mortgagees out of possession, but they are claiming it under an agreement by the lessee with the lessor that the rent shall be paid directly to them,—an agreement which they may in equity enforce against the lessee. It is an appropriation of the rent to their use, and the cases which may hold that the mortgagee may not take the

rents until he takes possession of the property have no application to the case of a specific agreement by which the rents are expressly appropriated each year during the pendency of the debt to the payment of the interest thereon.

Finally, it is said "that after the receivers were appointed for the property covered by the mortgage, as indicated above, the receivers are the proper parties to assert any claim for rent due on the lease, if any is due, and that the bondholders, if aggrieved, must make their complaint to the court appointing the receivers, and seek their relief there; that, the common pleas court of Huron county having acquired jurisdiction over this property, no other court, with either co-ordinate or concurrent jurisdiction, can interfere with the management or control of it, or acquire jurisdiction of the subject-matter of investigation." Enough has been said to answer this objection, but it is proper to point out a little more fully its insufficiency. It is true that all persons interested in the property in the custody of the receivers of the Huron county common pleas court, if they desire any relief with respect thereto, must apply to that court, and have their equities in the property worked out, with the assistance of that court. The weakness of the contention in the present case, however, is that the subject-matter of dispute is a fund which is not in the possession of the Huron county common pleas court, but is in the possession of this court. It is true that the receivers of the Huron county common pleas court are given authority in their appointment to collect any amount which may be due from the receivers of the Baltimore & Ohio Railroad Company to them, but, in order to collect that amount, they must come to this court for relief, because the property which they seek is in this court, and not in the court of their appointment. The petitioners claim an interest, not in the property in the custody of the Huron common pleas court, but in the fund in this court, and say that they are entitled in this application to the payment of interest on their bonds. The conclusion reached seems to be sustained by the decision of the court of appeals of the Second circuit in Bank v. Smith, 30 C. C. A. 133, 86 Fed. 398.

It may be—I do not decide that question now—that, in order to grant the relief which the petitioners ask, namely, that of compelling the Baltimore & Ohio Company and the Central Ohio Company to pay the interest on their bonds to the extent of the rental due under the lease, or compensation due for use and occupation, of the Sandusky Railroad Company, the Sandusky Company and its receivers should be made parties to this proceeding. But the ground of the plea here under consideration is not that the petition does not make them necessary parties, but it is that, on the face of the petition, taken with the facts recited in the plea concerning the litigation of the Huron county common pleas court and the appointing of receivers there, this court has no jurisdiction of the controversy sought to be made by the petition. Upon that issue it seems to me that the plea is bad. Leave will be given to the petitioners to make parties defendant to their

petition the Sandusky Company and the receivers appointed by the Huron common pleas court. As the lessees are receivers of a court, they cannot be brought in here as parties, except with the permission of the court appointing them. If that permission is withheld, it will then become a question whether they are such necessary parties as to prevent this court from proceeding to adjudicate who are entitled to the rental fund now in possession of its receivers. I cannot suppose that receivers in a state court or the court appointing them will decline to permit them to be made parties to this proceeding when the purpose of their appointment was the collection of rent from the receivers of the Baltimore & Ohio Railroad Company appointed by this court. If, however, it is not deemed proper to allow them to become defendants to this petition, it may become a matter of serious consideration whether they can be granted leave to file a petition herein against the receivers of this court.

The issue made on the plea of the Central Ohio Company to the petition is with the petitioners, the plea is overruled, and leave is given to answer. Leave is also given to the petitioners to make new parties.