## ERIE R. CO. v. LITTELL.

(Circuit Court of Appeals, Second Circuit. January 27, 1904.)

### No. 71.

1. TRIAL—EXCEPTIONS TO CHARGE—FEDERAL PRACTICE.

It is the well-settled rule of the federal courts that all exceptions to a charge must be specific and be taken before the jury retires. A general exception to several propositions, either given or refused, will be overruled, if any one was correctly given or refused.

2. SAME.

Counsel, who before the retirement of the jury requested the court to indicate which of the several specific requests to charge had been given, and which refused, which the court then refused to do, is entitled to be heard on exceptions taken to the refusal of each separate request, identified by its number, having made them as specific as the situation permitted.

3. CARRIERS—ASSUMPTION OF RECEIVERS' CONTRACTS BY PURCHASER OF RAILROAD—TICKETS SOLD BY RECEIVERS.

A conveyance of a railroad on foreclosure sale, subject to all outstanding contracts made and obligations incurred by the receivers, which were

assumed by the purchaser, bound such purchaser or his grantees to accept tickets which had been sold by the receivers for the carriage of passengers over the road, and which were outstanding and unused at the time of the sale. Wallace, Circuit Judge, dissenting.

4. SAME—ERROR IN SALE OF TICKET—EJECTION OF PASSENGER.

When a passenger has purchased a ticket from a railroad company, purporting to entitle him to passage to a particular place, and has undertaken his journey therefor, and there is nothing on the face of the ticket, and no prior knowledge or notice of rules of the company, which would make such ticket invalid, brought home to the purchaser, he is rightfully a passenger on the train, and the company is liable in an action to recover damages for his ejection.

5. SAME—WRONGFUL EJECTION OF PASSENGER—RIGHT TO MAKE RESISTANCE.

A passenger, who is rightfully on a railroad train, has a right to refuse to be ejected from it, and to make sufficient resistance to denote that he is being removed by compulsion and against his will.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error by defendant in the court below to review the rulings, refusals to charge, and certain portions of the charge of the United States Circuit Court for the Southern District of New York on the trial of an action at law brought by Isabella M. Littell, a resident of the state of New Jersey, against the defendant, to recover damages for having been put off its train while a passenger thereon between New York City and Hohokus, N. J.

F. B. Jennings, for plaintiff in error.
Franklin Pierce, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. On the morning of November 18, 1899, the plaintiff purchased a ticket from Hohokus to Paterson and return. After having stopped at Paterson, she left there for New York in the afternoon of the same day, having purchased a ticket from Paterson to New York and return. That night she left New York by the 10:30 train for Hohokus. When the conductor demanded her ticket, she handed him a ticket, numbered 118, and which read as follows: "New York, Lake Erie & Western R. R. Co. This ticket at reduced fare is only valid for one continuous passage from New York to Hohokus. W. C. Robinson, General Passenger Agent. Excursion." Upon its back it was stamped: "New York, Lake Erie & Western Railroad Company." The date of the issuance of the ticket had been stamped upon its back, but it was so dim that it could not be made out.

The testimony of the plaintiff as to what occurred thereafter is substantially as follows: The conductor refused to accept the ticket, saying it was no good, had been bought in 1893, and that said railroad had gone out of existence. Plaintiff replied that this was the same Erie Railroad on which she had traveled for 35 years, that she had bought this ticket for that road, and suggested that he should

¶ 5. See Carriers, vol. 9, Cent. Dig. § 1452.

refer the question to the superintendent, and, if she was wrong; she would pay another fare and exonerate him. She also gave him her name and address, and showed him her commutation ticket, and he went away. Later he came back and told her she would have to pay her fare or get off, and, after stopping at the next station for some time, he came to her and told her he had ordered two policemen to come in and arrest her. She then protested against being thus put off the train, and offered the return portion of the other ticket she had purchased that day; but he said, "I won't have it," and struck her hand down. Later, and while the train was still in motion, she offered to pay her fare, but he refused to accept it. At Passaic the two policemen boarded the train, the conductor put his arm around her body, the policemen took hold of her arms, the conductor threw her forward on the front seat on her knees, striking her chest against the top of the seat, and they pushed her through the car, out onto the platform. She only resisted removal to the extent of holding onto the arms of the seats, which she was obliged to do in order to save herself from falling on the floor of the car. She tried to hold onto the rail, but her hand was struck and wrenched free, and she was dragged to the ground. The policemen took her to the police station, where the sergeant examined all her tickets, and told her they (the police) could not hold her, and that she could catch the 1:20 a. m. train for Hohokus, which she did, arriving there after 2 o'clock in the morning.

The evidence introduced by defendant contradicted the plaintiff's testimony as to the tender of the other ticket and of the fare, and as to the amount of force used in ejecting her from the car; but all of her material statements were corroborated by other testimony. The jury rendered a verdict in favor of the plaintiff for the sum of $2,000 damages.

Counsel for plaintiff contends that certain assignments of error, because of the court's refusal to charge as requested by defendant, are insufficient, because the exceptions taken thereto were general and indefinite. The well-settled rule in the federal courts is that all exceptions to the charge must be definite, and must be publicly taken before the jury retires, so as to challenge the judge's attention to each proposition of law as it is presented, and enable him to exercise his right to modify any misstatement or error in said charge. Park Bros. & Co. v. Bushnell, 60 Fed. 583, 585, 9 C. C. A. 138; Hodge v. Chicago & A. Ry. Co., 121 Fed. 48, 52, 57 C. C. A. 388. And, where only a general exception is taken to several propositions submitted to a jury or refused upon requests, the exception will be overruled, provided any of the propositions be correct. Newport News & Mississippi Valley Co. v. Pace, 158 U. S. 36, 15 Sup. Ct. 743, 39 L. Ed. 887; Hodge v. Chicago & A. Ry. Co., supra. But the record shows that in the case at bar counsel for defendant was confronted by conditions which precluded the possibility of taking such distinct and several exceptions in accordance with the prevailing practice. Before the jury retired he called the attention of the court to his specific requests, asked the court whether it had indicated which were charged and which were refused, and suggested that he

(the counsel) ought to indicate before the jury retired the portions of the charge to which he wished to except. The judge stated in reply that he did not think he would then go through the requests to any extent, that they were refused except so far as covered in the charge, and that he (the judge) would like to have the jury go out and attend to their duties. Thereupon counsel for defendant was permitted to take his exceptions after the jury retired.

That the judge had not indicated in writing on said requests which of them he had refused to charge is evident from his subsequent statement that he could not tell which they were. But counsel for defendant thereupon distinctly excepted to the refusal to charge each separate request, identifying it by its number, so far as the same had been refused and had not been covered by said charge, and the judge allowed said exceptions, saying, "Unless I have absolutely left out something by accident." It does not appear that anything was accidentally or erroneously omitted from the charge. But, in any event, counsel for defendant is entitled to be heard on his exceptions to said refusals to charge. He had seasonably called the attention of the court to the usual method of procedure; the judge had refused to avail himself of the opportunity thus offered to supply the omission of any material statement in his charge, and had thus obliged counsel to postpone the definite statement of his exceptions until it was too late to correct any errors; and counsel for defendant at the first possible moment had stated his several exceptions as distinctly as the situation permitted. We are satisfied that said exceptions, under the circumstances, were sufficient.

Counsel for defendant requested the court to charge the jury that said ticket did not entitle plaintiff to passage, if it was issued by the New York, Lake Erie & Western Railroad Company, or was issued prior to December 1, 1895. The court refused said request, and charged the jury as follows:

"If that ticket was issued by the New York, Lake Erie & Western road, I think that the Erie Railroad Company was bound to honor it, unless you shall find, upon the testimony before you, that it was issued by the original company more than six years prior to the time that an attempt was made to use it."

To this charge, and to the refusal to charge as above, the defendant duly excepted. The court also charged, as requested by defendant, as follows:

"If the jury find that the ticket in question was sold prior to November 18, 1893, the same was outlawed, and the defendant was justified in refusing to accept the same without incurring any liability therefor, and the jury must find that the ticket did not entitle plaintiff to passage."

The questions are thereby raised as to the relations existing between the New York, Lake Erie & Western Railroad Company and the defendant, and the obligations assumed by the latter. Counsel for defendant contends that as the ticket was issued by the New York, Lake Erie & Western Railroad, and as this railroad had been sold under foreclosure of its mortgage, and was subsequently purchased by this defendant, it (the defendant) was not responsible for the contracts of said mortgagor, such as are evidenced by this ticket, but that such contracts were

subordinate to the mortgage, and were cut off by its foreclosure. Counsel for defendant further contends that, as it did not acquire title to or take possession of said railroad until December 1, 1895, it was not bound to accept any ticket sold prior to that date.

It appears, from the record of the proceedings whereby the defendant acquired title to the property and franchises of said New York, Lake Erie & Western Railroad, that from July 25, 1893, until November 11, 1895, said New York, Lake Erie & Western Railroad was in the hands of receivers appointed by this court; that on said date, by virtue of a decree of this court, said property was transferred by the special master of the court to certain individuals, and was by them transferred to this defendant. The indenture under which said transfer was made to defendant provided that said property and franchises were conveyed to the defendant—

"Subject, also, to all contracts heretofore made, or liabilities heretofore incurred, by John G. McCullough and Eben B. Thomas, receivers appointed in the consolidated cause aforesaid, and to all their acts in connection with the said premises, franchises, and property, so far as the said contracts or liabilities are still outstanding and unsatisfied, which said contracts, liabilities, and acts, as well as all and every the covenants and liabilities made or incurred by the said parties of the first part hereto, in or by reason of said deed executed by the said special master as aforesaid, the said party of the second part hereby assumes, and from and against the same does hereby covenant to and with the said parties of the first part to indemnify and save them, and their heirs, executors, and administrators, harmless."

The jury, under the instructions of the court cited above, have found as a fact that said ticket was issued subsequent to November 18, 1893, and therefore subsequent to the date when the receivers took possession of the road. The obligation to accept and honor this ticket, if issued between November 18, 1893, and November 11, 1895, was one of the outstanding and unsatisfied contract obligations of the receivers expressly assumed by the defendant as one of the conditions on which it acquired title. If it was issued after said date, it was a valid and subsisting contract between plaintiff and defendant. The foregoing exceptions must therefore be overruled.

The refusal of the court to charge that the ticket was not good over the road of the defendant is assigned as error on the further ground that there was no sufficient evidence to go to the jury of its sale subsequent to May, 1893. It is true that Tonkin, who was the station agent at Hohokus in 1893, testified that, while he could not state when the ticket was sold, he was sure it was sold prior to May 1, 1893, and that the plaintiff's statement that she bought said ticket on March 9 or 10, 1898, was only corroborated by her other testimony. But the book, which it was said would have contained a record of the sale of said ticket, No. 118, had been destroyed, and it was admitted that there were two different series or sets of tickets similarly numbered, and that after the defendant took possession of said road it continued for a considerable period to sell the said tickets of the New York, Lake Erie & Western road. Defendant's witnesses testified that such tickets were always stamped with the stamp of the Erie Railroad. The ticket in question was not thus stamped. The plaintiff testified that she bought said ticket about March 9 or 10, 1898, using the other part to go to New York. She supported this statement by her testimony that,

prior to March, 1898, she had lived at Waldwick; that in March, 1898, she went to the house which she had rented in Hohokus to have some work done, and on that occasion purchased said ticket; and she stated that her failure to use the return portion on previous trips was due to her having laid away the ticket case in which she had placed it. In these circumstances, we think the jury were justified in finding, upon all the evidence, that said ticket was purchased on a date subsequent to November 18, 1893, and therefore subsequent to the date at which the receivers took possession of said road.

Error is further assigned to the refusal of the court to charge that, if plaintiff presented an invalid ticket, the conductor was justified in ejecting her from the train; that if the plaintiff had money to pay her fare, or another valid ticket, and she failed to pay such fare or surrender said ticket, she could only recover for its value; and that if originally she refused to pay her fare, such refusal was not cured by her subsequent offer to pay. These contentions are disposed of by the finding of the jury, upon sufficient evidence, that said ticket was valid. Besides, as already stated, she testified that she attempted to comply with these suggested requirements while the train was in motion.

Error is further assigned to the charge of the court that it was immaterial that the conductor had been instructed by defendant to refuse tickets issued by the New York, Lake Erie & Western Railroad. Counsel for defendant contends that, even if the station agent improperly sold plaintiff a wrong ticket, she would have her redress therefor in a proper action, but that such ticket would not entitle her to ride without paying her fare. The finding of the jury that the ticket was valid dispenses with the necessity of discussing this contention at length. The rule is well settled that when a passenger has purchased a ticket purporting to entitle him to passage to a particular place, and has undertaken his journey therefor, and there is nothing on the face of his ticket, and no prior notice or knowledge of rules of the railroad company, inconsistent with the statements on said ticket, brought home to the purchaser, he is rightfully a passenger on the train, and the railroad company is liable in this form of action for his expulsion. New York, L. E. & W. R. Co. v. Winter's Adm'r, 143 U. S. 60, 69, 12 Sup. Ct. 356, 36 L. Ed. 71; Murdock v. Boston & Albany Railroad Co., 137 Mass. 293, 50 Am. Rep. 307.

Other assignments of error question the correctness of the refusal of the court to charge that plaintiff was not entitled to recover any damages sustained from her refusal to leave the car quietly, or by reason of her resistance to the conductor in his attempt to eject her. The plaintiff testified that she did not make "a great deal of resistance, except holding onto the arms of the cars. I had to hold on, or I should have been on the floor." Other witnesses testified that she held onto the arms of the seats to prevent being thrown down, and was pressing backward, while the three men threw her forward, and shoved and dragged her through the car. There was some testimony by defendant's witnesses that she went very quietly, and some testimony that she resisted forcibly while in the car, and it was proved that when she reached the platform she held onto the iron rail; she saying she "was compelled to do so." The court charged:

"That if she was lawfully upon that train of the defendant at the time when the ejection took place, she had a right to exercise the amount of resistance which was testified to by all the parties connected with it."

In Erie Railroad Co. v. Winter's Adm'r, supra, a passenger was wrongfully ejected from a train with such force that he suffered considerable physical injury. Counsel for plaintiff admitted that no more force was used in expelling plaintiff than was necessary to overcome his resistance. The Supreme Court affirmed a judgment for plaintiff for $10,000, and upon the question here presented said as follows:

"If he was rightfully on the train as a passenger, he had the right to refuse to be ejected from it, and to make a sufficient resistance to being put off to denote that he was being removed by compulsion and against his will; and the fact that under such circumstances he was put off the train was of itself a good cause of action against the company, irrespective of any physical injury he may have received at that time, or which was caused thereby. English v. Delaware & Hudson Canal Co., 66 N. Y. 454 [23 Am. Rep. 69]; Brown v. Memphis & Charleston R. R. Co. [C. C.] 7 Fed. 51; Philadelphia, Wilmington & Baltimore Railroad v. Rice, 64 Md. 63 [21 Atl. 97]."

This discussion disposes of all the assignments of error which were pressed on the argument of this case. We think that the charge of the court correctly and fully covered all the questions of law presented, that it was quite as favorable to the defendant as it had a right to request, and that there was no error prejudicial to the rights of defendant.

The judgment is affirmed with costs.

WALLACE, Circuit Judge (dissenting). If the ticket was sold while the receivers were operating the railroad, in my opinion the plaintiff was not entitled to recover. The defendant at that time had not come into existence, but was subsequently incorporated, and acquired the railroad by deed from vendors who had bought it at a foreclosure sale. In the deed the defendant covenanted to indemnify the vendors, and also the receivers, against contracts and liabilities outstanding. I cannot agree with the majority of the court that by force of that covenant the defendant became obligated to carry the plaintiff as a passenger who had purchased a ticket from the receivers. That covenant was exclusively for the benefit and protection of the vendors and the receivers, and not inuring to the benefit of the plaintiff. She could not derive any right of action founded upon it. Austin v. Seligman (C. C.) 18 Fed. 522; Welden National Bank v. Smith, 86 Fed. 398, 30 C. C. A. 133, 137.