### SUTHERLAND v. BRACE et al.[1]

(Circuit Court of Appeals, Seventh Circuit. January 6, 1896.)

#### No. 256.

1. REPLEVIN—WHEN LIES—UNLAWFUL DETENTION.

Rev. St. Wis. c. 123, provides that an action will lie when property is wrongfully detained by the defendant, and may be prosecuted by one having a special property therein. *Held*, that where, by the provisions of a contract for the sale of logs, the vendors have a lien on the lumber manufactured from the logs for all amounts unpaid on the contract, with the right of possession upon failure of the vendee to carry out his agreement, and they are given the right to sell the property and reimburse themselves the amount due them, a refusal by the vendee to give them possession, upon their demand therefor under such circumstances, makes a case of unlawful detention within the statute.

2. ASSIGNMENT OF ERRORS—SUFFICIENCY.

An assignment of error asserted that the court erred "in refusing to instruct the jury as requested by the said defendant, a copy of which instructions, so requested and refused, with the ruling of the court, and exceptions of the defendant thereto, is hereto annexed and marked 'Exhibit A.'" Then followed seven different instructions separately stated, properly numbered, and in numerical order. *Held*, that such an assignment of errors could not be considered, in view of the rule requiring each error to be separately stated.

3. SAME.

An assignment of error, that the court "erred in instructing the jury as to those portions, duly objected and excepted to by the defendant, a copy of said instructions, with the exception of the defendant thereto, being hereto annexed and marked 'Exhibit B.,'" which exhibit discloses some five portions of the charge, separately stated, properly numbered, and in numerical order, is insufficient, under the rule.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

' Rehearing pending.

Action by H. Brace, S. H. Davis, and others against W. R. Sutherland. There was a judgment for plaintiffs, and defendant brings error. Affirmed.

This was an action of replevin brought by the defendants in error to recover possession of some 90 piles of pine lumber of the value of $33,000. In April, 1894, a written contract was executed between the parties, by which the defendants in error sold and transferred to the plaintiff in error some 10,000,000 feet of logs. The contract contains the following provision: "The said logs are to be placed in towing booms at the mouth of Iron river and Flag river in Bayfield Co., Wis.,—said booms to be furnished by the party of the second part (plaintiff in error), as fast as needed by the parties of the first part (defendants in error), and as wind and weather will permit; the said parties of the first part agreeing to furnish said logs with all due diligence and dispatch as needed by the party of the second part. From the time of the said delivery of said logs at the towing booms, the logs and lumber manufactured therefrom shall be at the risk of the party of the second part, and he shall pay in full for any logs or lumber that there may be thereafter lost or destroyed. The party of the second part shall begin the removal of said logs from the place of delivery promptly upon the opening of navigation in the spring of 1894, and continue the same as fast as logs are ready for delivery to his points of manufacture, and said logs shall all be converted into lumber on or before the 1st day of October, 1894. The said parties of the first part shall have a lien upon said logs, and the lumber manufactured therefrom, for any and all amounts due or unpaid upon this contract by the said party of the second part, and the lumber manufactured from said logs shall be kept in separate piles by the said party of the second part and marked 'H. B.,' and said lumber shall not be shipped any faster than the same is paid for, but a sufficient quantity of said lumber shall be retained on the dock and in the yard of the party of the second part, and not shipped, sufficient to fully secure any amount which may be due to said parties of the first part. In case of the failure of the said party of the second part to carry out his part of this contract, the said parties of the first part are hereby authorized to take possession of said lumber, sell the same, pay themselves out of the proceeds of such sale the amount which may be due them under this contract, and pay the balance over to said party of the second part."

Claiming a large sum to be due under the contract, the defendants in error, on the 1st of November, 1894, demanded possession of the lumber manufactured from such logs, then in possession of the plaintiff in error and described in the complaint, which demand was refused, and, according to the allegations of the complaint, the plaintiff in error "has ever since unlawfully and wrongfully detained, and still detains, the same from the plaintiff at the place aforesaid, to the damage of the plaintiff in the sum of $33,000." The property described was taken under a writ of replevin, and subsequently returned to the plaintiff in error upon the execution and delivery of an undertaking therefor, as provided by the statute of Wisconsin. The answer alleged, substantially, a failure and neglect to furnish the logs described with due diligence and dispatch, and resulting damages to the amount of $10,000. At the trial it was disclosed that the defendants in error ran down to the rafting grounds, at the mouth of Flag and Iron rivers, something over 9,000,000 feet of logs; that about 8,000,000 feet of the logs were towed to the mills of the plaintiff in error at Ashland, and there manufactured into lumber; that after deducting the amount paid, there was, at the commencement of this action, a balance due the defendants in error for the 8,000,000 feet of logs,—some $11,000. It further appeared that some 1,300,000 feet of these logs were lost at the mouth of the Flag river by reason of storms, and that their value was some $11,000. The logs were driven down the Flag and Iron rivers to Lake Superior, there made up into rafts by being placed in towing booms, and then towed by tugs to Ashland, a distance of some 70 miles. The towing boom consisted of a string of long logs or timbers connected by short chains, within which the logs are placed. The manner of filling the boom is this: The boom is

placed at the end of the piers extending out into the lake at each side of the mouth of the river, one part of the boom being opened and the ends fastened to either side of the inside of the piers from 200 to 300 feet from the outer end. That part of the boom outside the piers is held in position either by the tug or by anchor. The logs contained in the dam above, some 800 feet from the mouth of the river, are then discharged through a sluiceway and driven into the boom. When the boom is filled the ends are fastened, and the raft is in condition for towing. The loss of logs in question occurred through the intervention of storms arising while the ends of the boom were open, and the contention at the trial was whether it was the duty of the defendants in error, under the contract, to have closed the boom, or whether their duty was performed when the logs had been driven into the boom; it being claimed upon the one part that a complete delivery was made when the logs were driven into the towing boom, and that, under the contract, the risk then shifted to the plaintiff in error. Upon the other part it was contended that there was no completed delivery until the ends of the towing booms next to the shore had been fastened together, so as to make a completed raft. It was undertaken at the trial to show that the latter construction of the contract was warranted by a certain local custom and by the acts of the party. At the close of the evidence the plaintiff in error moved the court to direct a verdict in his favor "for the reason that the action of replevin would not lie, and that the only remedy to enforce the plaintiff's lien, under the contract upon which the plaintiff brought this action, is in equity," which motion was overruled, and to which ruling the plaintiff in error duly excepted. The jury found by their verdict that the plaintiffs (defendants in error) had, at the commencement of the action, a special property in the property described, by virtue of a lien thereon, and were lawfully entitled to the possession of the property by virtue of their special property therein; that the property described was wrongfully detained by the defendant (plaintiff in error); that the value of the property was $30,000, and the value of the special property of the plaintiffs therein was $21,705.68, and that they had sustained damage by reason of the detention of the property in the sum of $300.24. Whereupon judgment was rendered, pursuant to the statute, for the damages and costs, amounting in all to $23,081.67; to review which judgment this writ of error is sued out.

Tompkins & Merrill, for plaintiff in error.

Lamoreux, Gleason, Shea & Wright, Brossard & Collignon, and Olin & Butler, for defendants in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

The objection that the action of replevin will not lie cannot be sustained. There would seem to have been some confusion in the decisions of the English courts whether replevin would lie in a case where there had been no unlawful taking. So uncertain were the holdings in the mother country that two great states came to diverse conclusions upon this subject. It was held in New York that the action lay only for goods unlawfully taken and detained (Pangburn v. Patridge, 7 Johns. 140; Barrett v. Warren, 3 Hill, 348); while, upon the other hand, the courts of Massachusetts held that at common law replevin was the proper remedy for goods unlawfully detained, without reference to the mode by which the possession had been acquired (Ilsley v. Stubbs, 5 Mass. 284; Badger v. Phinney, 15 Mass. 359; Baker v. Fales, 16 Mass. 147; Marston v. Baldwin, 17 Mass. 606). We think, however, that the keynote of the whole discussion was sounded by Lord Chief Justice Denman in Evans

v. Elliott, 5 Adol. & E. 142, in the pithy and expressive declaration, "Every unlawful detention is a taking." We need not, however, consume time by laborious search into ancient law, for the whole matter is settled by statute in the various states, so that now in New York, as in Massachusetts, by statute the remedy is applied to cases of unlawful detention without respect to the mode by which possession was acquired. This statutory rule applies with but few exceptions in all of the states; the states of Illinois, New Jersey, and South Carolina being numbered among the exceptions, and holding that the action will only lie when the taking was unlawful. The statute of Wisconsin (Rev. St. c. 123), under which this proceeding was had, provides that an action may lie when the property is wrongfully detained by the defendant, and may be prosecuted by one having a special property therein, the facts in respect to which shall be set forth. We understand that special property in a thing is that which gives a qualified or limited right thereto. Here, by the express provisions of the contract, the defendants in error had a lien upon the lumber manufactured from these logs for all amounts unpaid upon the contract, with the right to the possession upon failure of the plaintiff in error to carry out his part of the contract, and they were given the right, upon taking such possession, to sell the property, and reimburse themselves the amount due them, rendering the balance to the plaintiff in error. If, therefore, they were entitled under the contract to the sum claimed, they had right to possession, and a refusal by the plaintiff in error of that possession, upon demand, made a case of unlawful detention within the statute.

At the trial numerous instructions to the jury were requested of the court by the plaintiff in error, and refused, and excepted to, and numerous exceptions were taken to portions of the charge of the court to the jury, principally with reference to the construction of the contract, and with reference to the alleged custom in the light of which, it is said, the contract should be read. We are compelled to hold that these exceptions cannot properly be considered. The assignment of errors asserts that the court erred "in refusing to instruct the jury as requested by the said defendant, a copy of which instructions, so requested and refused, with the ruling of the court, and exceptions of the defendant thereto, is hereto annexed and marked 'Exhibit A.'" Then follow seven different instructions, separately stated, properly numbered, and in numerical order. Another assignment of error is "that the court, in said trial, erred in instructing the jury as to those portions duly objected and excepted to by the defendant, a copy of said instructions, with the exception of the defendant thereto, being hereto annexed and marked 'Exhibit B,'" which exhibit discloses some five portions of the charge, separately stated, properly numbered, and in numerical order. In Railroad Co. v. Mulligan, 14 C. C. A. 547, 67 Fed. 569, this court held that such an assignment of errors could not be considered. The writer dissented from the decision, but it is the ruling of the court, and must be followed. See, also, Vider

v. O'Brien, 18 U. S. App. 711, 10 C. C. A. 385, 62 Fed. 326. If the practice thereby established be deemed onerous and the rule declared ought to be rescinded, it can more certainly be done by strict adherence to the decision than by ignoring it. It is true that by rule 11 (47 Fed. vi.),[1] the court is authorized, at its option, to notice a plain error not assigned according to the rule. We have, therefore, searched the record to ascertain if any such error exist, and we are free to say that, whatever criticism or technical objection may be fitly indulged with respect to the charge to the jury, we are of the opinion that the court below properly interpreted the contract and fairly submitted to the jury the evidence with respect to the alleged custom in the light of which, it is said, this contract should be construed, and with respect to the acts of the parties thereunder. We observe no palpable error that would justify a departure from the rule as it has been construed by the court.

The judgment will be affirmed.