## HARRINGTON et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 7, 1920.)

No. 5391.

1. **Criminal law ☞970(9)—Charging date of conspiracy as within five-month period sufficient against motion in arrest.**

An information charging a conspiracy as occurring within a stated five-month period is sufficient as against a motion in arrest of judgment, where no motion to quash nor demurrer had been filed, and no bill of particulars asked for, in view of Rev. St. § 1025 (Comp. St. § 1691), curing defects of form in indictments, and Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), requiring the court on writ of error to give judgment, without regard to technical errors not affecting substantial rights of the parties.

2. **Indictment and information ☞21, 86(7)—"Caption" defined; commission of conspiracy within division of district held sufficiently alleged.**

The caption is not a part of the indictment, but is the formal history of its finding, and it is to be distinguished from the introductory portion of the indictment, and where the indictment in its introductory part recited that the grand jurors at a term within a certain division presented that defendants in that division and district entered into the conspiracy in one count, and in another count that they conspired at one place to the grand jurors unknown, and alleged an overt act in that division, the place of conspiracy was sufficiently alleged.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Caption.]

3. **Criminal law ☞113—All conspirators may be prosecuted in division where overt act was committed.**

A prosecution for conspiracy to impede administration of justice, under Penal Code, § 37 (Comp. St. § 10201), is properly brought against all conspirators in the division and district where the overt act is performed, regardless of the place where the conspiracy was formed.

4. **Conspiracy ☞34—Endeavor to obtain from prosecuting witness statement contrary to testimony not conspiracy to obstruct justice.**

A request by an attorney for defendant to obtain from a witness for the prosecution a sworn statement contradicting her testimony before the grand jury, if the attorney believed such testimony to be false, is not an attempt to obstruct the administration of justice.

5. **Criminal law ☞423(6)—Admissions by conspirator not connected with conspiracy not binding on others.**

In a prosecution for conspiracy to prevent a witness from testifying for the government, a declaration by one of the defendants to the defendant in the original prosecution that he had advanced money to the witness to come to the city, where the other defendants were was not a declaration in furtherance of the conspiracy, being mere admission as to a past act, and therefore not admissible against the other conspirators.

6. **Criminal law ☞878(2)—General verdict, with penalty permissible under either count, sustainable.**

A general verdict of guilty under two counts of an indictment, with a penalty which might be imposed under either count, is sustainable under either count.

7. **Criminal law ☞510—Conviction may be based on uncorroborated testimony of accomplice.**

It is not a rule of law in the United States courts that convictions cannot be based on the testimony of accomplices alone, if the jury believes such accomplices.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Criminal law ⟨key⟩1129 (4)—Assignment to refusal of group of instructions not sustainable where one erroneous.**

A general assignment of error to the refusal to give a group of requested instructions cannot be sustained, where one of the instructions in the group was erroneous.

**9. Criminal law ⟨key⟩1059 (2)—General exceptions to group of instructions insufficient.**

An exception to instructions as a group is too general to present any question for review.

**10. Conspiracy ⟨key⟩45—Evidence that action was induced by other motive than act of conspirators held proper.**

In a prosecution for conspiracy to induce a witness for the government to leave the country, evidence that the wife of the one accused of the offense against the witness urged him to induce the witness to leave the country was admissible to aid the jury in determining whether his testimony that he was induced by the conspiracy was true.

**11. Witnesses ⟨key⟩268 (16)—Cross-examination to show additional motive of witness is proper.**

Where the testimony of a witness in a prosecution for conspiracy indicated that the advice of defendants was his sole motive in inducing a witness against him to leave the country, a question whether his wife did not urge him to get the witness out of the country was proper cross-examination.

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

M. F. Harrington and others were convicted of conspiracy to obstruct and impede the administration of justice, and they bring error. Reversed and new trial ordered.

W. E. Mitchell, of Sidney, Iowa, and Arthur F. Mullen, of Omaha, Neb. (Tinley, Mitchell, Pryor & Ross, of Council Bluffs, Iowa, and P. C. Winters, of Creston, Iowa, on the brief) for plaintiffs in error.

F. A. O'Connor, U. S. Atty., of Dubuque, Iowa (Seth Thomas, Asst. U. S. Atty., of Ft. Dodge, Iowa; on the brief), for the United States.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The plaintiffs in error were found guilty of conspiracy and have prosecuted a writ of errror. The indictment contained four counts, but the verdicts are under the third and fourth counts. The substance of the charge is that there was pending for trial at Sioux City, Iowa, in the United States District Court for the Northern District of Iowa, an indictment against Charles T. Anderson, in which he was charged with transporting Mary Pittman in interstate commerce, for purposes of prostitution and debauchery, and that Mary Pittman was a necessary witness for the government on the trial under the indictment; that the plaintiffs in error and others conspired to obstruct and impede the administration of justice, in violation of section 135 of the Penal Code (Comp. St. § 10305), in planning to cause Mary Pittman to make some written statements which would be contradictory of her testimony before the

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

grand jury, and in planning to cause her to be concealed, so that she could not be subpœnaed as a witness, and in planning to have her sent out of the United States and into Canada, so that she would not testify as a witness upon the trial of the case against Anderson. A number of acts are alleged to have been done to effect the object of the conspiracy. Anderson pleaded guilty. A verdict of acquittal was rendered in favor of Gerald Harrington. The defendants Michael F. Harrington, Arthur W. Scattergood, Mrs. Frances Murphy, and Leonard Camp were found guilty, and sentence was pronounced.

[1] The defendants claim that it was erroneous to overrule their motion in arrest of judgment, because the indictment did not allege the date or the place of commission of the offense charged against them. No motion to quash nor demurrer to the indictment was presented. Section 1025 of the Revised Statutes (Comp. St. § 1691) forbids the holding of any indictment insufficient for any defect or imperfection of form, if it does not tend to the prejudice of the defendant, and section 269 of the Judicial Code (Comp. St. Ann. Supp. 1919, § 1246) provides that in the hearing of any writ of error in any case, civil or criminal, the court shall give judgment after an examination of the whole record "without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

In the third count the defendants are charged with conspiring subsequently to October 22, 1915, and prior to May 27, 1916, and in the fourth count the conspiracy is charged as occurring some time within the first five months of the year 1916. As the defendants were entitled to ask for a bill of particulars (Rosen v. United States, 161 U. S. 29, 35, 16 Sup. Ct. 434, 480, 40 L. Ed. 606), the failure to do so must be taken as an indication of their satisfaction with the definiteness of the date alleged. The allegation of the date of the offense is ordinarily formal, inasmuch as any other date before the finding of the indictment and within the statute of limitations may be proved, unless a particular day is made material by the statute creating the offense. Hardy v. United States, 186 U. S. 224, 22 Sup. Ct. 889, 46 L. Ed. 1137; Bryant v. United States, 257 Fed. 378, 168 C. C. A. 418; Hume v. United States, 118 Fed. 689, 55 C. C. A. 407. In Ledbetter v. United States, 170 U. S. 606, 18 Sup. Ct. 774, 42 L. Ed. 1162, the offense was alleged to have been committed on the ———— day of April, 1896, and it was held to be sufficient against a motion in arrest of judgment, because the defendant could not have been misled, and because of the right of the prosecution to prove any date within the scope of the statute of limitations, even if a particular day had been stated. No claim is made by the defendants in this case that they were prejudiced by the general date alleged, or that they were unable to properly make their defense, or that they could not protect themselves after judgment against another prosecution for the same offense, and in view of the statutes cited it must appear that the substantial rights of the parties were invaded before a new trial may be granted.

[2] It is claimed that the indictment does not allege the division of the district where the offense was committed, except by reference to the caption, and that the caption is no part of the indictment. The caption is the formal history of the finding of the indictment (Ex parte Bain, 121 U. S. 1, 7, 7 Sup. Ct. 781, 30 L. Ed. 849; 1 Bish. Cr. Proc. 653, 657), and hence is no part of it; but the caption is to be distinguished from the indictment itself. In this case it appears from the body of the indictment, in the introductory portion thereof, that the grand jurors impaneled and sworn at a term of the United States court held at Creston, in the Southern district of Iowa, and Southern division, did find and present, in the third count, that the defendants in that division and district entered into the conspiracy charged.

[3] The fourth count of the indictment charged that the defendants conspired at some place to the grand jurors unknown, and alleged an overt act as occurring at Creston, Iowa, in the Southern division of the Southern district. A prosecution for conspiracy under section 37 of the Penal Code (Comp. St. § 10201) is properly brought against all of the conspirators in the division where the overt act is performed, regardless of the place where the conspiracy was formed. Hyde v. United States, 225 U. S. 347, 367, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Brown v. Elliott, 225 U. S. 392, 400, 401, 32 Sup. Ct. 812, 56 L. Ed. 1136. There was no error in overruling the motion in arrest of judgment because of these objections.

The sufficiency of the evidence to show that an offense was committed in the jurisdiction of the trial court was challenged by a request for an instruction directing an acquittal of the defendants. Section 53 of the Judicial Code (Comp. St. § 1035) provides that "all prosecutions for crimes or offenses shall be had within the division of such district where the same were committed" (unless the defendant requests and the judge orders a transfer of the place of trial), and section 81 (section 1066) provides for one division of the Southern district of Iowa, called the "Southern division," which was the place of prosecution of this offense.

The third count of the indictment charges a conspiracy in the Southern division of the district, while the fourth count charges a conspiracy at some place unknown to the grand jurors, and undertakes to allege overt acts in that division to carry it into effect. As Gerald Harrington was acquitted by the verdict, the first question is whether two or more of the remaining defendants entered into a conspiracy in the Southern division as charged in the third count. A careful review of the evidence convinces that there is no testimony that Anderson, Michael F. Harrington, or Mrs. Murphy entered into any conspiracy in that division, either with each other or with Scattergood or Camp. It is not shown that either of these three defendants was in that division, or had any communications in that division with any of the other defendants. A verdict of acquittal should have been directed in their favor upon the third count. This count of the indictment, so far as it relates to Scattergood and Camp and is supported by any evidence, charges (1) a conspiracy to weaken and de-

stroy the testimony of Mary Pittman, which she had given before the grand jury, by causing her to make an affidavit that that testimony was false; (2) a conspiracy to cause her to be concealed, so that the proper officers would be unable to serve a subpœna upon her and secure her attendance as a witness on the trial of the case against Anderson; and (3) a conspiracy to prevent her from attending at that trial and giving testimony, by persuading her to go and to remain in Canada, with the intent of preventing her attending on the court and giving her testimony.

[4] There was evidence to show that Scattergood called on Mrs. Pittman at Creston, Iowa, and endeavored to have her make a statement in writing, before a notary public, which would contradict what she had said before the grand jury; but there was no evidence tending to show that Scattergood was consciously attempting to obtain a statement of a falsehood. The contents or substance of the statement which Scattergood solicited Mrs. Pittman to make and sign are not disclosed, except that it was to be contradictory of her testimony given before the grand jury. Even though Mrs. Pittman had testified before the grand jury to facts that would have shown Anderson guilty of a crime under the White Slave Act, it was Scattergood's privilege to disbelieve her, and to believe the version of the facts told him by his client, Anderson, and to so believe, although she maintained that she had told the truth. It is not an unlawful attempt to influence or impede a witness, or the due administration of justice, for one to seek to obtain from a witness a statement of the facts as he believes them to be, without the exercise of undue influence, even though such a statement may conflict with prior testimony given by the one making the statement. Such an effort is not regarded with favor, because of the temptation to influence the witness unduly; but the mere request for a statement believed to be true does not offend against the statute under which this indictment was drawn, because it is not corrupt conduct.

In support of the charge of the conspiracy to conceal Mrs. Pittman and to send her to Canada for that purpose, there was testimony that, when Scattergood was endeavoring to obtain this statement from Mrs. Pittman, Camp was appealed to by Mrs. Pittman for advice, and he demanded that some money should be paid to her for making such a statement; that thereupon Scattergood gave Camp a wink, and they went outside of the room for a conference; that Scattergood told Mrs. Pittman in this interview that, if she testified against Anderson, Mrs. Anderson would prosecute her; that while Camp and Scattergood were talking with her there was talk of her going to Canada; that Camp came back after going out with Scattergood, and said to Mrs. Pittman that he was to take her to Council Bluffs the next morning and had $10 for car fare to take both of them, and that Mrs. Pittman was going to Canada, and that they were to give her money with which to go to Canada. Anderson testified that Scattergood told him at Omaha, on the day following his trip to Creston, that he believed they could get Camp to get this girl out of the country; that while Camp had been in jail a good many times, and had a sort of crooked career, he believed he was all right, and just the fellow for

that kind of a trip, and asked Anderson to see Camp and learn what he would take to get this girl into Canada, and, when Anderson reported to Scattergood that it would cost $500, Scattergood said he hardly knew what to do, but after a conference with Johnson, Scattergood said he believed the best thing to do was to send her across the country, but advised that Camp be not given much of the money until they were at the depot ready for the train. Camp had made quite a full confession of his part in these transactions, and it was read in evidence against him. In view of the other testimony of the relations of the parties and of Scattergood's connection with them, this testimony, while denied generally by Scattergood, was sufficient to show an unlawful conspiracy with Camp in the Southern division, and there was evidence of an overt act, in that Scattergood and Camp admitted that they persuaded and induced her to leave Creston, Iowa, and go to the home of Mrs. Murphy in Omaha, where she was persuaded to go to Canada.

A portion of the fourth count of the indictment charges a conspiracy between Anderson, Scattergood, and Michael F. Harrington (1) to cause Mrs. Pittman to go from Creston, Iowa, to Omaha, and there to threaten her with prosecution for adultery in Nebraska if she should testify in favor of the government in the case pending against Anderson; and (2) "having so threatened" her, they further "conspired to cause her to make a statement" and "to mail it to the United States attorney for the Northern district of Iowa," which would state that she "had failed to tell the truth" before the grand jury, and "would have to so testify" when she was called as a witness. In the second portion of this count Anderson, Scattergood, Michael F. Harrington, and Mrs. Murphy are alleged as conspirators combining (3) to cause Mrs. Pittman to make a sworn written statement that her testimony before the grand jury was untrue, "and for the purpose of obtaining" the statement the defendants would cause Mrs. Pittman to go from Omaha to Creston, where Scattergood was to proceed and obtain the statement; also (4) these four defendants conspired, "in the event the other plan should fail," to cause Mrs. Pittman to be concealed without the jurisdiction of the District Court of the Northern District of Iowa, so that her location would be unknown and the government deprived of her presence as a witness, and while thus concealed Anderson, Scattergood, and Michael F. Harrington would appear in the court and demand an immediate trial, knowing that Mrs. Pittman was a necessary witness for the government and that she could not be produced.

There was much evidence from which a jury might infer an unlawful conspiracy in Nebraska, but there was no evidence of any such conspiracy between these four defendants in the Southern division of the Southern district of Iowa, so that the government's case under this count depends upon proof of an act in that division by one of the conspirators to effect the object of the conspiracy. Many acts are alleged to have been done to effect the conspiracy, but those alleged to have occurred outside of the division and in Nebraska, or in Sioux City, Iowa, must be disregarded. The act of Scattergood in endeavor-

ing to obtain a written statement from Mrs. Pittman, at Creston, Iowa, must also be disregarded, for reasons heretofore stated. There remains only the alleged act of Scattergood in causing Mrs. Pittman to go from Creston to Omaha. There was no direct testimony that Scattergood asked or persuaded Mrs. Pittman to leave Creston, or that he furnished the money for that purpose, or procured Camp to act for him. There was testimony by Anderson of Scattergood's admissions, made after he had returned to Omaha, that he engaged Camp to bring her to Omaha.

[5] The rule is that, where parties conspire to do an unlawful act, the acts or declarations of one of them is the act or declaration of all, when it is done in the furtherance of the common design and is one of the natural and probable consequences of the conspiracy. United States v. Gooding, 12 Wheat. 461, 469, 6 L. Ed. 693; Logan v. United States, 144 U. S. 263, 309, 12 Sup. Ct. 617, 36 L. Ed. 429; Brown v. United States, 150 U. S. 93, 98, 14 Sup. Ct. 37, 37 L. Ed. 1010; 1 Greenleaf on Ev. § 111. This statement of Scattergood to Anderson was not a statement in furtherance of the conspiracy, and had nothing to do with its continued execution, but was a mere narration of a past fact, an ordinary admission against interest. There was also in evidence a statement by Camp, made almost a year afterwards, in which he claimed that Scattergood asked him to bring Mrs. Pittman to Omaha on this occasion and paid him money to do so. Such statements were properly limited as evidence by the court's instructions that they were admissible only against the maker, except as they were made in the actual carrying out of the object of the conspiracy; but, when thus limited in effect, there was no evidence against the defendants Michael F. Harrington and Mrs. Murphy of the fact that Mrs. Pittman was caused to leave Creston by Scattergood, the overt act which had to be proved before a conviction could be had in the division where the case was tried. A verdict should therefore have been directed for these two defendants.

[6] The evidence was sufficient as against Scattergood and Camp under this count; but as there was only a general verdict of guilty, and the penalty imposed was not more than could have been imposed under one count of the indictment, the verdicts against them are sustainable under either count.

Complaint is made of the refusal of requested instructions to the jury; but these instructions contain a number of distinct propositions of law, and the record shows exception taken en bloc in this form:

"These instructions, 1 to 10, inclusive, asked by defendants before beginning of arguments, and refused, except as given. Defendants and each of them excepts."

[7] The assignment of error is directed to the refusal of instructions numbered 5, 6, 7, 8, 9, and 10 as a group. No. 10 of the refused instructions told the jury that no defendant could be convicted on the testimony of an accomplice, unless he was corroborated in all material facts. There is no rule of law in the courts of the United States that prevents convictions on the testimony of accomplices alone, if the jury believes them. Caminetti v. United States, 242 U. S. 470, 495,

37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Ahearn v. United States, 158 Fed. 606, 607, 85 C. C. A. 428; Knoell v. United States, 239 Fed. 16, 20, 152 C. C. A. 66; Wallace v. United States, 243 Fed. 300, 307, 156 C. C. A. 80; Reeder v. United States (C. C. A.) 262 Fed. 36, 42. The court instructed the jury that the fact that one was an accomplice would naturally weaken the credence that should be given to his testimony.

[8] When a number of instructions are requested, containing distinct propositions of law, a general assignment of error to the refusal to give them all cannot be sustained, if any one of the instructions is properly refused. Cass County v. Gibson, 107 Fed. 363, 366, 46 C. C. A. 341; St. Louis Brewing Ass'n v. Hayes, 107 Fed. 395, 401, 46 C. C. A. 370; Hodge v. Chicago & A. Ry. Co., 121 Fed. 48, 52, 57 C. C. A. 388; H. D. Williams Cooperage Co. v. Scofield, 125 Fed. 916, 917, 60 C. C. A. 564; Erie R. Co. v. Littell, 128 Fed. 546, 548, 63 C. C. A. 44; Southern Pac. Co. v. Hetzer, 135 Fed. 272, 285, 68 C. C. A. 26, 1 L. R. A. (N. S.) 288; Sutherland v. Brace, 71 Fed. 469, 472, 18 C. C. A. 199; Empire State Cattle Co. v. Atchison, T. & S. F. Ry. Co., 147 Fed. 457, 461, 77 C. C. A. 601.

[9] The exception taken to the instructions as a group was also too general to present any question for review. McCabe & Steen Co. v. Wilson, 209 U. S. 275, 279, 28 Sup. Ct. 558, 52 L. Ed. 788; Baggs v. Martin, 108 Fed, 33, 34, 47 C. C. A. 175; Southern Pac. Co. v. Hetzer, supra.

[10, 11] Error is assigned as to a number of rulings upon the evidence, but it is necessary to notice only one assignment. Anderson was one of the principal witnesses for the government, and in his direct examination he testified that both Harrington and Scattergood advised him that Mrs. Pittman should be sent to Canada. On cross-examination he was asked if his wife was not insistent, and did not urge him to get Mrs. Pittman out of the country. An objection was sustained, on the ground that this testimony was immaterial and not cross-examination. This ruling was erroneous. It was the contention of the defendants that no such conversation occurred between Anderson and his attorneys, and they so testified as witnesses for the defense. The truth of Anderson's statements that he was acting under advice of his counsel was a vital issue, and if his wife was urging him to furnish money and to send Mrs. Pittman away to Canada, on the chance that the cause of their domestic troubles would be thereby removed, it was a proper matter for the jury to consider in deciding whether a conspiracy existed to remove this witness or whether Anderson acted on his own judgment and from another strong and natural motive when he furnished the money that carried her away. It was proper cross-examination, because the effect of his direct testimony was that the only motive that caused him to take this woman to Canada was the advice he received from these attorneys, and the existence of another motive impelling him to this act was both contradictory and explanatory of his direct testimony. The refusal to allow this question to be answered affected a substantial right of the par-

ties, and may have been the determining factor with the jury in solving the dispute in the evidence.

The judgment will be reversed, and a new trial ordered as to all of the plaintiffs in error.

STONE, Circuit Judge, dissents.